# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Sergio Aguirre, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| Powerchute Sports, LLC, | § | SA-10-CV-0702 XR |
| James Sowerwine, | § | |
| TC Trust, LLC, | § | |
| Octagon, Inc., | § | |
| | § | |
| Defendant. | § | |

## <u>REPORT AND RECOMMENDATION</u>

**TO:  Honorable Xavier Rodriguez**
**United States District Judge**

This report and recommendation addresses the pending motions to dismiss.[1]  I

have authority to enter this report under 28 U.S.C. § 636(b) and the district court's order

referring pretrial motions to me.[2]  After considering the motions, the associated

pleadings, and applicable standards and law, I recommend granting the motions in part

and denying the motions in part.

**Nature of the case**.  Plaintiff Sergio Aguirre filed this case on August 23, 2010,

---

[1]Docket entry #s 16 & 18.

[2]Docket entry # 32.

alleging infringement of his patent for a physical conditioning aid for golfers. Aguirre named the following defendants: James Sowerwine; Powerchute Sports, LLC (Powerchute Sports); TC Trust, LLC (TC Trust); and Octagon, Inc. (Octagon).[3] Sowerwine is a golf instructor who developed a golf training device called the Powerchute. Powerchute Sports sells the Powerchute golf training aid. According to Aquirre's complaint, TC Trust is a limited liability corporation, formed by Sowerwine and others, to manufacture the Powerchute golf training device. This report and recommendation refers to Sowerwine, Powerchute Sports and TC Trust as the "non-Octagon defendants." The last defendant — Octagon — is a consulting company that provides sports marketing services.

The dispute involves two patent applications — Aguirre's patent for his golfer's physical conditioning aid and nonparty Thomas Celone's[4] application for a patent for a golf swing exercise device. According to Aguirre, Celone's application was ultimately assigned to Powerchute and transferred to TC Trust. The U.S. Patent and Trademark Office (the patent office) issued a patent flowing from the Celone application on July 27, 2010. Aguirre's patent was issued on June 10, 2008.

---

[3]Docket entry # 1.

[4]According to publicly-available information, Celone is a professional golfer and owner of a personal training business specializing in workouts to increase golfer endurance, strength and flexibility.

Aguirre amended his complaint on September 17, 2010, to add claims for violation of section 2 of the Sherman Antitrust Act, fraud, tortious interference with prospective business relations and economic relations, and unjust enrichment. The non-Octagon defendants then moved to dismiss the added claims. Octagon moved to dismiss all claims. The defendants relied on Rule 12(b)(6).

**Standards applicable to a Rule 12(b)(6) motion**. A defendant in a civil action may move to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief may be granted."[5]

> To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[6]

In considering a Rule12(b)(6) motion, the district court may not go outside the complaint, but the court can consider documents attached to a motion to dismiss if the documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim.[7] If a Rule 12(b)(6) motion appears meritorious, and a more carefully drafted complaint might cure any deficiencies, the district court must first "give the plaintiff an

---

[5]Fed. R. Civ. P. 12(b)(6).

[6]*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

[7]*See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

opportunity to amend his complaint, rather than dismiss it…."[8]

**Aguirre's patent infringement claim**.  Relevant to Octagon, federal patent law states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States…infringes the patent."[9]  Liability for patent infringement extends to those who actively induce patent infringement[10] and to those who knowingly contribute to patent infringement.[11]  Patent infringement can occur directly or indirectly.  Octagon asked for dismissal of Aguirre's patent-infringement claim on grounds that Aguirre "fail[ed] to allege even a single fact that supports his conclusory claims against Octagon and thus fails to satisfy the pleading requirements of Fed. R. Civ. P. 8(a)."[12]

**Pleading standards**.  Rule 8 requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint need

---

[8]*Fuller v. Rich*, 925 F. Supp. 459, 461 (N.D. Tex. 1995).

[9]35 U.S.C. § 271(a).

[10]35 U.S.C. § 271(b).

[11]35 U.S.C. § 271(c) ("Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, *knowing* the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.") (emphasis added).

[12]Docket entry # 18, pp. 1-2.

not include detailed factual allegations, but a plaintiff must identify the grounds of his purported entitlement to relief; a plaintiff's obligation requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[13] A complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face."[14] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'"[16]

In this case, Aguirre alleged that Octagon "has been and now is directly and jointly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of [Aguirre's patent] by, among other things, making, using, selling, and/or offering for sale systems and/or methods for the physical[] conditioning of golfers covered by one or more claims of [Aguirre's patent] to the injury of Mr. Aguirre, including the sale of Powerchute Sports, LLC's Powerchute product."[17]

---

[13]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[14]*Twombly*, 550 U.S. at 570.

[15]*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[16]*Iqbal*, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8).

[17]Docket entry # 3, ¶ 71.

Because this allegation constitutes a formulaic recitation of the elements of cause of action for direct and indirect patent infringement by inducing and contributing to patent infringement, the court must determine whether other factual allegations state a claim that is plausible on its face.

The factual allegations supporting Aguirre's patent infringement claim are extensive — comprising nine pages of the first amended complaint. Aguirre's allegations focus on events that occurred between the time Celone applied for his patent on August 11, 2003 and TC Trust's petition for revival of Celone's application on March 10, 2010. Despite numerous factual allegations about the prosecution of the two patents, only one allegation relates to Octagon. That allegation follows: "On June 7, 2010, Octagon, Inc. and Powerchute Sports announced a partnership in which Octagon will provide digital and social media consulting services to Powerchute and assist with sales and marketing offers.'"[18] The allegation referred to a Powerchute press release "announc[ing] partnership with Octagon, Inc."[19] Because a copy of the press release is attached to the first amended complaint, and because the press release is central to Aguirre's claim, the court may consider the document.

The press release stated, "Powerchute sales and marketing activation by Octagon

---

[18]Docket entry # 3, ¶ 58.

[19]Docket entry # 3, ex. U.

will include a grass roots endorsement program with golf professionals across the globe, partnerships with the First Tee chapters and other charitable organizations."[20] Even considering the assertion in the press release, Aguirre's allegation about the purported partnership does not rise to the level of plausible because it failed to allege Octagon acted with knowledge of Aguirre's patent. To prove direct infringement by inducing infringement, Aguirre must prove Octagon induced infringing acts and Octagon knew or should have known its actions would induce actual infringement of Aguirre's patent.[21] Aguirre's allegation that Octagon announced a partnership to provide digital and social media consulting services to Powerchute and assist with sales and marketing offers does not implicate this proof requirement because it does not allege Octagon knew or should have known about Aguirre's patent at the time the partnership was formed or announced.[22] The announcement of a purported partnership between Powerchute Sports and Octagon does not suggest Octagon knew

---

[20]Docket entry # 3, ex. U.

[21]*Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003) ("To succeed on this theory, a plaintiff must prove that the defendants' 'actions induced infringing acts and that [they] knew or should have known [their] actions would induce actual infringement.'"). *See also Sims v. Western Steel Co.*, 551 F.2d 811, 817 (10th Cir. 1977) (stating that liability for active inducement of patent infringement requires the infringer to act intentionally).

[22]*Accord Dynamis v. Leepoxy Plastics*, 831 F. Supp. 651, 657 (N.D. Ind. 1993) ("[A]n accused infringer must be shown to have actual knowledge of the patent and the infringement and have the actual intent to induce the infringement.).

about Aguirre's patent. The press release suggests nothing more than Octagon agreed to assist Powerchute Sports in marketing the Powerchute. The allegation provides nothing from which the court can draw a reasonable inference that Octagon is liable for inducing actual infringement. As a result, Aguirre's claim of direct infringement by inducement falls short of stating a claim to relief that is plausible on its face.

Aguirre's claim of contributory infringement fairs no better. A plaintiff alleging contributory infringement must also show the alleged contributory infringer acted with knowledge.[23] Aguirre did not allege Octagon acted with knowledge of Aguirre's patent or Octagon knew the Powerchute infringed on his patent. As a result, Aguirre's claim of contributory infringement falls short of stating a claim to relief that is plausible on its face. Aguirre's claims for indirect infringement fall short for the same reason: Knowledge is still required and Aguirre did not allege that Octagon acted with

---

[23]*Aro Mfg. v. Convertible Top Replacement*, 377 U.S. 476, 488-89 (1964) (stating that statute providing for contributory infringement requires plaintiff to show that "the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing"); *Sing v. Culture Products*, 469 F. Supp. 1249, 1254-55 (D.C. Mo. 1979) ("A claim of contributory infringement requires that plaintiff establish (1) that defendants sold a material to be used in a patented process; (2) that said material constituted a material part of the patented process; (3) that defendants knew the material to be especially adapted for use in the infringement of such patent; and (4) that the material did not constitute a staple article suitable for substantial noninfringing use.").

knowledge.[24]  To the extent Aguirre relies on knowledge of Aguirre's patent after the

lawsuit was filed, such knowledge is insufficient to plead the requisite knowledge for

indirect infringement.[25]  In the absence of a request to amend the complaint to allege the

requisite knowledge, Octagon is entitled to dismissal of Aguirre's patent infringement

claims.

**Aguirre's Sherman Act claim**.  In count 2 of his amended complaint, Aguirre

alleged under section 2 of the Sherman Antitrust Act that the defendants "have

attempted to monopolize the market for portable, resistance-based training aids for

golfers"[26] by attempting to enforce a patent unenforceable due to fraud.  Section 2

provides that a "person who shall monopolize, or attempt to monopolize, or combine or

conspire with any other person or persons, to monopolize any part of the trade or

---

[24]*Xpoint Technologies v. Microsoft Corp.*, 730 F. Supp. 2d 349, 356 (D. Del. 2010)
("For contributory infringement, an infringer must sell, offer to sell or import into the
United States a component of an infringing product 'knowing [the component] to be
especially made or especially adapted for use in an infringement of such patent, and not
a staple article or commodity of commerce suitable for substantial non-infringing use.'")
(quoting 35 U.S.C. § 271(c).  And about indirect infringement by inducement, *see id.*
("'To demonstrate inducement of infringement, the patentee must establish 'first that
there has been direct infringement, and second that the alleged infringer knowingly
induced infringement and possessed specific intent to encourage another's
infringement.' As such, a complaint stating a claim for inducement must allege the
requisite knowledge and intent.") (internal citations omitted).

[25]*See Xpoint Technologies*, 730 F. Supp. 2d at 357.

[26]Docket entry # 3, ¶ 91.

commerce…shall be deemed guilty of a felony….”[27]  The non-Octagon defendants and Octagon asked for dismissal of Aguirre's section 2 claim on grounds Aguirre lacks standing.[28]  The defendants maintained Aguirre lacks standing because he did not allege the defendants have taken any action to enforce the Celone patent against Aguirre or done anything to monopolize the market for portable, resistance-based training aids for golfers.

Aguirre's claim is called a *Walker Process* claim.  The claim takes its name from the Supreme Court's decision in *Walker Process Equipment v. Food Machinery and Chemical Corporation*,[29] in which the Court determined that enforcement of a patent procured by fraud on the patent office can serve as the basis for a claim under section 2.[30]

> The gist of [a *Walker Process*] claim is that since [the patentee] obtained its patent by fraud it cannot enjoy the limited exception to the prohibitions of § 2 of the Sherman Act, but must answer under that section and § 4 of the Clayton Act in treble damages to those injured by any monopolistic action taken under the fraudulent patent claim.[31]

"*Walker Process* claims…relate to a single type of behavior capable of stripping a

---

[27]15 U.S.C. § 2.

[28]Docket entry #16, pp. 3-5 & docket entry #18, pp. 5-6.

[29]382 U.S. 172 (1965).

[30]*Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 175 (1965).

[31]*Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 176 (1965).

patentee's patent-law immunity and thereby exposing the patentee to liability under other laws."[32]

To prevail on his *Walker Process* claim, Aguirre must establish: (1) the defendants attempted to enforce the patent flowing from the Celone application; (2) the Celone patent issued because the defendants defrauded the patent office; (3) the defendants' attempted enforcement threatened to lessen competition in the market for portable, resistance-based training aids for golfers; (4) Aguirre suffered antitrust damages; and (5) all other elements of attempted monopolization.[33] To prove attempted monopolization, the plaintiff must "prove (1) that the defendant…engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."[34] "[I]f the patentee has done nothing but obtain a patent in a manner that the plaintiff believes is fraudulent, the courts lack

---

[32]*Unitherm Food Sys. v. Swift-Eckrich*, 375 F.3d 1341, 1357 (Fed. Cir. 2004).

[33]*See Unitherm Food Sys.*, 375 F.3d at 1355.

[34]*Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993). *See Geddie v. Seaton*, No. 3:06-CV-0895-R, 2006 WL 2263335, at * 7 (N.D. Tex. Aug. 8, 2006) (applying the cited factors in determining whether the plaintiff had stated a claim for attempted monopolization under section of the Sherman Act and stating that "proof of unfair or predatory conduct alone is not sufficient to make out the offense of attempted monopolization, for that would be contrary to the purpose and policy of the Sherman Act").

jurisdiction to entertain…a *Walker Process* claim."[35]

The factual allegations supporting Aguirre's section 2 claim are provided in paragraphs 1-92 of the first amended complaint. The assertions in those paragraphs do not allege an attempt to enforce the patent flowing from the Celone application (the first element of a *Walker Process* claim). Although Aguirre complained that the defendants advertised the Powerchute as a patented design,[36] that alone does not constitute enforcement of a patent because advertising a product as a patented design has legitimate business justification.[37] To the extent Aguirre relied on a letter from Powerchute Sports' attorney,[38] a plaintiff's demand letter does not transform a defendant's response into a patent enforcement action.[39]

---

[35]*Unitherm Food Sys.*, 375 F.3d at 1358.

[36]Docket entry # 3, ¶¶ 89-90.

[37]*See Great Western Directories v. Sw. Bell Tel. Co.*, 63 F.3d 1378, 1385-86 (5th Cir. 1995) (explaining that "[e]xclusionary conduct is conduct that tends to exclude or restrict competition and is not supported by a valid business reason.").

[38]*See* docket entry # 21, pp. 7-8 (asserting that under the totality of the circumstances, the letter from Powerchute Sports' attorney constitutes proof of an enforcement action of the Powerchute patent).

[39]*See* docket entry # 16, ex. A (stating in response to Aguirre's demand letter that "the claims of [Aguirre's patent cannot be both valid and infringed because the [Powerchute] patent, which accurately describes the Powerchute product, was filed more than two years before the earliest priority date of [Aguirre's] patent" and that the Powerchute patent has not been asserted against Aguirre or any of Aguirre's customers).

In addition, Aguirre did not allege the defendants engaged in predatory or anti-competitive conduct or that a dangerous probability of achieving monopoly power exists (elements of attempted monopolization).  Instead, Aguirre complained about alleged conduct intended to defraud the patent office.  In the absence of factual allegations about an attempt to enforce the patent flowing from the Celone application, predatory or anti-competitive conduct, and the existence of a dangerous probability of achieving monopoly power, the court cannot  draw the reasonable inference that the defendants are liable for attempting to monopolize the market for portable, resistance-based training aids for golfers by attempting to enforce a patent unenforceable due to fraud.  As a result, Aguirre failed to state a claim under section 2 of the Sherman Antitrust Act.

To the extent Aguirre relied on standing under the Declaratory Judgment Act,[40] his argument fails for the following reasons: (1) Aguirre did not invoke the Declaratory Judgment Act, and (2) "A person not under reasonable apprehension of suit cannot overcome the absence of declaratory standing simply by challenging the patent prosecution and asserting fraud."[41]  To the extent Aguirre relied on a purported

---

[40]Docket entry # 21, pp. 6-9.

[41]*Medimmune v. Genentech*, 427 F.3d 958, 968 (Fed. Cir. 2005).

13

partnership or joint enterprise between Octagon and the non-Octagon defendants,[42] such reliance is misplaced. Aguirre did not allege a formal partnership. He only alleged that Octagon and Powerchute announced a partnership to market and sell the Powerchute. Aguirre did not allege liability based on partnership or joint enterprise. In the absence of a request to amend the complaint to cure pleading deficiencies, all defendants are entitled to dismissal of Aguirre's section 2 claim.

**Aguirre's claim for common law fraud**. In count 3, Aguirre alleged the defendants engaged in common law fraud.[43] Aguirre's factual allegations for this claim focus on alleged fraudulent statements to the patent office by attorneys representing nonparty Sowerwine Golf, Inc. According to Aguirre, Sowerwine Golf is a now defunct corporation formed by Sowerwine to market Sowerwine's golf services.[44] Aguirre asserted that Sowerwine Golf's attorney misrepresented the abandonment of the Celone patent application as unintentional.[45] Aguirre alleged that statements about the abandonment of the application were made on behalf of, or to the benefit of, the defendants. All defendants asked for dismissal of the common law fraud claim, arguing

---

[42]Docket entry # 22, pp. 5-6.

[43]Docket entry # 3, pp. 20-22.

[44]Docket entry # 3, ¶ 50.

[45]Docket entry # 3, ¶¶ 93-101.

that Aguirre failed to state a claim.[46]

To prove his fraud claim, Aguirre must prove: (1) the defendants made a material representation that was false; (2) the defendants knew the representation was false or made the representation recklessly as a positive assertion without any knowledge of its truth; (3) the defendants intended to induce Aguirre to act upon the representation; and (4) Aguirre actually and justifiably relied upon the representation and thereby suffered injury.[47] Rule 9 requires Aguirre to plead these elements with particularity.[48]

Aguirre's factual allegations focus on statements by the Sowerwine Golf attorney to explain delays in prosecuting the Celone patent application.[49] Aguirre characterized the statements as a fraudulent misrepresentation. Although Aguirre did not allege the statements were made to him, Texas fraud jurisprudence does not focus on whether an

---

[46]Docket entry # 16, pp. 6-7 & # 18, pp. 6-7.

[47]*See Ernst & Young v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). *See also Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) ("The elements of actionable fraud in Texas [are]: (1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury.").

[48]Fed. R. Civ. P. 9(b) ("In alleging fraud…, a party must state with particularity the circumstances constituting fraud…. ").

[49]Docket entry # 3, ¶¶ 36-49, 75-88 &, 94-101.

alleged misrepresentation was directly transmitted to the plaintiff, but rather on whether the defendant intended for the misrepresentation to reach the plaintiff and induce reliance.[50]  Aguirre, however, did not allege the attorney made the alleged misrepresentation to the patent office intending to influence Aguirre's conduct.[51] Instead, Aguirre asserted that the attorney had reason to expect that Aguirre would rely on the representation in believing the Powerchute is properly patented.[52]  Aguirre pleaded no act in reliance on the attorney's statements and specified no damages in reliance.  To draw a reasonable inference of liability from the allegation — that the attorney had reason to expect that Aguirre would rely on the representation in believing the Powerchute is properly patented — the court must assume the attorney knew Aguirre was pursuing a patent for a device similar to the Powerchute, Aguirre knew about the prosecution of the Celone patent application, Aguirre believed the Powerchute patent was valid, and Aguirre did not pursue efforts to sell his  golfer's physical conditioning aid as a patented invention because of the Powerchute patent. Even with these assumptions, no basis exists for a reasonable inference of liability on the part of Octagon.  Without the assumptions, there is no basis for reasonably inferring a

---

[50]*See Ernst & Young, ,* 51 S.W.3d at 578.

[51]*See Ernst & Young,* 51 S.W.3d at 578 ("[A] misrepresentation made through an intermediary is actionable if it is intended to influence a third person's conduct.").

[52]Docket entry # 3, ¶ 100.

non-Octagon defendant is liable for the alleged misrepresentation, making the allegation insufficient to state a claim for common law fraud. In the absence of a request to amend the complaint to cure pleading deficiencies, all defendants are entitled to dismissal of the fraud claim.

**Aguirre's tortious interference claim**. In count 4, Aguirre alleged tortious interference with prospective business relations and economic advantage. Aguirre claimed he suffered a "diminution in the value of his own, legitimately obtained patent; the value of his company, Zswinger, Inc.; [and] a loss in sales due to the Defendants improper use of the patent mark for a fraudulently obtained patent…."[53] All defendants argued that Aguirre failed to state a claim and asked for dismissal of the claim.[54]

> To prevail on a claim for tortious interference with prospective business relations, a plaintiff must show (1) a reasonable probability that the plaintiff and a third party would have entered into a contractual relationship; (2) that an independently tortious or wrongful act by the defendant prevented the relationship from occurring; (3) that the defendant did the act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of the conduct; and (4) that the plaintiff incurred actual harm or damage as a result of the defendant's

---

[53]Docket entry # 3, ¶ 107.

[54]Docket entry # 16, pp. 7-8 & docket entry # 18, p. 7.

interference.[55]

Although the plaintiff need not prove that "the contract would have certainly been made but for the interference[,] it must be reasonably probable, considering all of the facts and circumstances attendant to the transaction. More than mere negotiations must have taken place."[56]

As to the first two elements of his claim, Aguirre did not allege a reasonable probability that he and a third party would have entered into a business relationship and that the relationship was prevented from occurring. Instead, he asserted that the fraudulent misstatements by Sowerwine Golf's attorney prevented him "from being able to fully take the economic and business advantage of [his patent for his golfer's physical conditioning aid] as well as his own company, Zswinger, Inc."[57] He complained further that, "the Defendants…committed fraud on the [patent office] with a conscious desire not only to prevent Mr. Aguirre personally, but to prevent other persons from fully realizing the value of their patent or going concern relating to

_____

[55]*Astoria Indus. of Iowa v. SNF*, 223 S.W.3d 616, 632-33 (Tex. App.—Fort Worth 2007, pet. denied). *See Tex. Disposal Sys. Landfill v. Waste Mngt. Holdings*, 219 S.W.3d 563, 590 (Tex. App.–Austin 2007, pet. denied); *RAJ Partners v. Darco Const. Corp.*, 217 S.W.3d 638, 650 n.10 (Tex. App.—Amarillo 2006, no pet.)

[56]*Hill v. Heritage Res.*, 964 S.W.2d 89, 109 (Tex. App.—El Paso 1997, pet. denied).

[57]Docket entry # 3, ¶ 104.

portable, resistance-based training aids for golfers."[58]  Neither allegation refers to a

business relationship or any other interfered-with relationship.  Aguirre made no

allegation about discussions with prospective investors or buyers for his golfer's

physical conditioning aid, let alone allege the reasonable probability of a business

relationship or economic advantage.  Aguirre referred to no third party with whom he

sought a business relationship.  As pleaded, the only way the court can draw a

reasonable inference of liability on the part of the defendants is to assume Aguirre

anticipated a prospective business relationship with a person or business entity

interested in Aguirre's golfer's physical conditioning aid and the defendants knew

about that prospect.  Without the assumptions, no basis exists for a reasonable inference

of liability.  In the absence of a basis for a reasonable inference, Aguirre failed to state a

claim for tortious interference with prospective business relations and economic

advantage.[59]

---

[58]Docket entry # 3, ¶ 105.

[59]*Accord Martin v. Kroger Co.*, No. 99-20989,  2000 WL 992237, at * 4 (5th Cir. 2000)
(determining that plaintiff had no possibility of making out a claim for tortious
interference with a prospective business relationship where plaintiff alleged no facts
"suggesting that she and H.E.B. had even entered into discussions concerning
employment, let alone that her employment with H.E.B. was 'reasonably probable;'"
plaintiff only pre-interviewed with a "human resources representative, the
representative told her that they needed to check out her references, and that ultimately
H.E.B. did not hire her"); *Milam v. Nat'l Ins. Crime Bureau*, 989 S.W.2d 126, 132 (Tex.
App.—San Antonio 1999, no pet.) (determining no basis existed for a claim where
plaintiff's affidavit did "not even refer to clients with which negotiations had been

In a footnote, Aguirre asked for leave to amend his complaint to provide details about his claim for tortious interference with prospective business relations and economic advantage.[60]  Although the request is over-broad — asking for "leave throughout the course of this litigation to include any and all further incidents of interference discovered over the course of this litigation" — a more carefully pleaded complaint might cure Aguirre's pleading deficiencies for this claim.  Thus, Aguirre should be given the opportunity to cure the pleading deficiencies in regard to his claim for tortious interference with prospective business relations and economic advantage. Aguirre should be required to comply with the scheduling order[61] and Rule 16[62] to amend for any other reason.

**Aguirre's claim for unjust enrichment**.  In count 5, Aguirre alleged a claim for unjust enrichment.  Aguirre complained, "The Defendants have been unjustly enriched by the commission of fraud on the [patent office] by the Defendants, their agents and/or

---

undertaken;" instead, plaintiff referred to "the number of clients per year he generally represented in the past and state[d] that almost no one had retained him since the incident").

[60]Docket entry # 21, p. 9, n.8.

[61]Docket entry # 34.

[62]Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

predecessors.[63]  Aguirre further complained, "The Defendants have wrongfully secured the benefit of the Celone patent due to…fraud on the [patent office] and it is unconscionable that they should retain the benefit of this fraud."[64]  All defendants asked for dismissal of this claim.[65]

Unjust enrichment is a Texas theory of recovery, not a cause of action.[66]  "Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits."[67]  Although Aguirre pleaded unjust enrichment as a cause of action, the court can construe the associated count as pleading unjust enrichment as a basis for recovering damages rather than a cause of action.  Any damages flowing from unjust enrichment must be based on a state-law claim; federal

---

[63]Docket entry # 3, ¶ 109.

[64]Docket entry # 3, ¶ 110.

[65]Docket entry # 16, pp. 8-9 & docket entry # 18, p. 8.

[66]*See Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."); *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 731 (Tex. App.—Fort Worth 2008, , pet. dis'm) ("[A] party may recover under the theory of unjust enrichment when one person has obtained a benefit from another by fraud, duress, or the other taking of an undue advantage.").

[67]*Villarreal v. Grant Geophysical*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied).

patent law provides for damages for Aguirre's patent infringement claim.[68]

**Recommendation**.  The core dispute in this case is Aguirre's patent infringement claim.  The first amended complaint fails to state a claim for patent infringement as to Octagon.  I recommend granting Octagon's motion (docket entry # 18) to that extent and dismissing the claim as pleaded against Octagon.

Aguirre also failed to state a claim for violation of section 2 of the Sherman Antitrust Act, fraud, and tortious interference with prospective business relations.  Although it seems unlikely Aguirre can plead an interfered-with business relationship to state a claim for tortious interference with business relations and economic advantage — a plaintiff who had an interfered-with business relationship would include it in a 28-page complaint — the court should give Aguirre the opportunity to replead that claim.  Two weeks to replead is sufficient time if Aguirre has an interfered-with business relationship to serve as the basis of a claim.  I recommend denying the pending motions in regard to the request to dismiss the claim for tortious interference with business relations and economic advantage.  If the court accepts this recommendation, it should construe Aguirre's claim for unjust enrichment as a theory for recovering damages on that claim.

---

[68]*See* 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.").

I recommend granting the motions (docket entry #s 16 & 18) in all other respects; that is, I recommend dismissing Aguirre's claims for violation of section 2 of the Sherman Antitrust Act and fraud.

If the court accepts my recommendations, the following claims will remain:

1.      A patent infringement claim (count 1) against Sowerwine, Powerchute Sports, and TC Trust; and

2.      A claim for tortious interference with prospective business relations (count 4), subject to sufficient pleading.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[69]  Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general

---

[69]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[70] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[71]

    **SIGNED** on June 17, 2011.


                    NANCY STEIN NOWAK
                    UNITED STATES MAGISTRATE JUDGE

---

[70]*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[71]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).