**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| SERGIO AGUIRRE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-10-CV-702-XR |
| | § | |
| POWERCHUTE SPORTS, LLC, JAMES | § | |
| SOWERWINE, TC TRUST, LLC and | § | |
| OCTAGON, INC., | § | |
| | § | |
| *Defendants*. | § | |

**ORDER ON MOTIONS TO DISMISS**

On this date, the Court considered Defendants' Motions to Dismiss (Docket Nos. 16 and 18).

Having considered the motions and Plaintiff's filings in this suit, the Court hereby GRANTS IN

PART and DENIES IN PART the motion to dismiss of defendant Octagon, Inc. and GRANTS the

motion to dismiss of defendants Powerchute Sports, LLC, James Sowerwine, and TC Trust, LLC.

**I. Background**

Because the Court is considering a motion to dismiss under Rule 12(b)(6), the Court sets

forth the allegations in the Plaintiff's Complaint as true. Beginning in 2002, Plaintiff, Sergio Aguirre

began tinkering with the concept of a golf swing trainer. Eventually he developed the concepts

embodied in Provisional Application No. 60/609,932, which he filed on September 14, 2005. On

the same day, Aguirre filed US Patent Application No. 11/226,752 ("'752 Application"), titled

"Physical Conditioning Aid for Golfers." The 752 Application was published on April 13, 2006

under US Patent Publication No. 2006/0079344 A1. On January 25, 2008, a letter of allowance was

sent by the USPTO to Aguirre, and on June 10, 2008, US Patent No. 7,384,344 ("'344 Patent") was

1

issued.  In 2008, Aguirre began to form Zswinger, Inc. and registered and began using the web domain www.zswinger.com.  In an attempt to market its product, Zswinger was a featured exhibitor at the PGA Merchandise Show in January of 2010 where James R. Sowerwine visited the Zswinger booth.

On August 11, 2003, Thomas Celone filed US Patent Application No. 10/649,236 ("'236 Application").  Celone jointly filed a "Request for Non-publication Pursuant to 37 C.F.R. § 1.213." On October 4, 2004, the Sierra Patent Group who had been assisting Celone filed a "Request for Withdrawal as Attorney or Agent."  The reason listed for withdrawal was that Celone had failed to pay the Sierra Patent Group for their legal services.  On October 29, 2004, the USPTO transmitted a non-final rejection, which required a reply within three months of the mailing date but no later than six months from the mailing date.

The six-month deadline passed on April 29, 2005 with no reply.  On February 3, 2005, the USPTO notified Celone of its acceptance of the withdrawal of Sierra Patent Group and appointed Celone as the agent of his own application.  On June 10, 2005, the USPTO sent a Notice of Abandonment to Celone.

On November 9, 2006, Smith & Hogen filed an Assignment of Rights in Patent Application, assigning the rights from Sowerwine Golf Solutions, LLC to Sowerwine Golf, Inc., and a Power of Attorney provided by Sowerwine Golf, Inc. and signed by James R. Sowerwine.  On November 21, 2006, the USPTO accepted the Power of Attorney and mailed a Notice of Acceptance.  On April 8, 2008, Sowerwine Golf, Inc. filed with the USPTO a Petition for Revival of Application for Patent Abandoned Unintentionally ("Petition for Revival"), a statement indicating that the entire delay was unintentional, and an amendment.  The USPTO granted a Notice of Allowance to Sowerwine Golf,

Inc., who subsequently abandoned the application on February 17, 2010 by failure to pay the issue and publication fees. Sowerwine Golf, Inc. was dissolved on February 15, 2010 and the '236 Application was assigned to Powerchute Sports, LLC, who thereby transferred its interest, or portion thereof, to TC Trust, LLC.

On March 10, 2010, TC Trust filed for revival of the abandoned '236 Application for reason of unintentional abandonment, claiming that the entire delay in filing the required reply was unintentional. On June 22, 2010, the USPTO granted the revival petition of the '236 Application and on July 27, 2010, US Patent No. 7,762,929 was issued from the '236 Application.

Sowerwine Golf, Inc. and Sowerwine Golf Solutions, LLC are both companies formed by James R. Sowerwine to market his golf services and products. Sowerwine Golf, Inc. was dissolved and Sowerine Golf Solutions, LLC is still in existence with James R. Sowerwine listed as President. Powerchute Sports, LLC ("Powerchute Sports") is a company formed by Mr. Sowerwine to manufacture and market the product called the "Powerchute." TC Trust, LLC ("TC Trust") is a company formed by Mr. Sowerwine to manufacture the product called "Powerchute." On June 7, 2010, Octagon, Inc. and Powerchute Sports announced a partnership for Octagon to assist with sales and marketing efforts. On its website, Powerchute Sports makes multiple references to the Powerchute's "patented design."

This suit was initiated by Aguirre on August 23, 2010 against Powerchute Sports, Sowerwine, TC Trust, and Octagon, Inc. In his First Amended Complaint, Aguirre alleged patent infringement, violation of the Sherman Antitrust Act §2, common law fraud, tortious interference with prospective business relations and economic advantage, and unjust enrichment.

On December 1, 2010, defendants Powerchute Sports, Sowerwine, and TC Trust (the "non-

Octagon defendants") filed a Motion to Dismiss counts II-V of Plaintiff's First Amended Complaint under FRCP Rule 12(b)(6). A response was filed on December 17, 2010 and a reply was filed on December 30, 2010. On December 15, 2010, defendant Octagon, Inc. filed a Motion to Dismiss Plaintiff's First Amended Complaint under FRCP Rule 12(b)(6). A response was filed on December 27, 2010 and a reply was filed on January 7, 2011.

The case was referred to the Magistrate Judge for recommendation under the authority of 28 U.S.C. § 636(b) and the court's order. The Magistrate made a recommendation granting the motions in part and denying them in part. Aguirre filed his objections to the report and recommendation of the U.S. Magistrate and enumerated his ten separate objections within.

## II. Legal Standard

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of [each] claim showing that the pleader is entitled to relief."[1] The purpose of Rule 8 is to require parties to state their claims with sufficient clarity "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests' . . ."[2] A complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face."[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4]

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party against whom a claim

---

[1] FED. R. CIV. P. 8(a)(1).

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] *Twombly*, 550 U.S. at 570.

[4] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

is brought to move to dismiss the pleading for failure to state a claim upon which relief can be granted.[5]  If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law.[6]  In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true.[7]  Additionally, the facts are construed favorably to the plaintiff.[8]

To survive a Rule 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[9]  Factual allegations must be sufficient to "raise a right to relief above the speculative level."[10]  A well-pleaded complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable."[11]

Relevant to Octagon's motion, federal patent law states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent."[12]  Liability for patent infringement extends to those who actively induce patent

---

[5]FED. R. CIV. P. 12(b)(6).

[6]*Id.*

[7]*Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).

[8]*Id.*

[9]*Twombly*, 550 U.S. at 555.

[10]*Id.*

[11]*Id.* at 556.

[12]35 U.S.C. § 271(a).

infringement[13] and to those who knowingly contribute to patent infringement.[14]

### III. Analysis

Defendant Octagon, Inc. seeks dismissal for failure to state a claim. The non-Octagon defendants seek dismissal for failure to state a claim on Counts II-V of Aguirre's complaint, leaving out only Count I which claims infringement of U.S. Patent No. 7,384,344 ("'344 Patent") by direct and/or indirect means. Count II alleges a violation of the Sherman Antitrust Act §2. Count III is a state law claim for common law fraud. Count IV claims tortious interference with prospective business relations and economic advantage by defendants making false statements to the USPTO with the knowledge that such fraud would result in Aguirre being unable to realize the value of his patent. Finally, Count V alleges that the defendants had been unjustly enriched by the defrauding of the USPTO by defendants.

### A. Count I: Infringement of U.S. Patent No. 7,384,344

Plaintiff's First Amended Complaint asserts that Octagon "has been and now is directly and jointly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '344 Patent."[15] Octagon has submitted a motion to dismiss for failure to state a claim under FRCP Rule 12(b)(6) stating in part that Aguirre's direct infringement claim is speculative and that the "knowledge" component of Aguirre's indirect infringement claim is not satisfied.[16]

---

[13]35 U.S.C. § 271(b).

[14]35 U.S.C. § 271(c).

[15]Docket #3 at ¶71.

[16]Docket #18 at 3-4.

## 1. Direct Infringement of U.S. Patent No. 7,384,344

"Factual allegations must be enough to raise a right to relief above the speculative level"[17] and Aguirre's complaint must nudge his claims "across the line from conceivable to plausible."[18] Aguirre makes reference to Octagon, Inc. within his complaint as follows:

> "On June 7, 2010, Octagon, Inc. and Powerchute Sports announced a partnership in which 'Octagon will provide digital and social media consulting services to Powerchute and assist with sales and marketing efforts.'"[19]

Aguirre also attached a copy of the press release announcing the partnership.[20] Aguirre alleges that the company Octagon partnered with, Powerchute Sports, was formed "to manufacture and market, among other things, a product called the 'Powerchute.'"[21] In his second reference to Octagon, Aguirre utilizes the form language of Form 18 to allege infringement of the '344 Patent by Octagon:

> "Upon information and belief, Defendant Octagon, Inc. has been and is now directly and jointly infringing . . . [by] making, using, selling and/or offering for sale systems and/or methods for physically conditioning golfers covered by one or more claims of the '344 Patent to the injury of Aguirre, including the sale of [the] Powerchute product."[22]

Referencing the holding of *McZeal*,[23] Aguirre argues that his statement of the elements of direct infringement based on the language of Form 18 is sufficient to survive a Rule 12(b)(6) motion

---

[17]*Twombley*, 550 U.S. at 555.

[18]*Iqbal*, 129 S.Ct. at 1951.

[19]Docket #3 at ¶58 (quoting Ex. B of Docket #3).

[20]Ex. B of Docket #3.

[21]*Id*. at ¶54.

[22]*Id*. at ¶71.

[23]*McZeal v. Sprint Nextel Corp*., 501 F.3d 1354 (Fed. Cir. 2007).

to dismiss.  The *McZeal* court reasoned from the holdings in *Conley*[24] and *Twombley*[25] that "a plaintiff in a patent infringement suit is not required to specifically include each element of the claims of the asserted patent."[26]  Rule 84 plainly states that "the forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate."[27]  Form 18 sets an example as to the minimum requirements of a patent infringement complaint.  "A patent infringement complaint that pleads at least the facts in Form 18 must be sufficient to state a claim under Rule 8(a) because to hold otherwise would render [Rule 84] a nullity."[28]  Therefore, in line with Rule 84 and Form 18, the court must determine whether Aguirre sufficiently pleaded all of the elements of patent infringement.  Form 18 provides the following elements for a patent infringement complaint: (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by making, selling, [and/or] using [the device] embodying the patent; (4) a statement that plaintiff has given notice to the defendant of its

---

[24]*Conley v. Gobson*, 355 U.S. 41 (1957) (setting forth an example complaint for patent infringement and holding that "the illustrative forms appended to the Rules plainly demonstrate [the pleading requirements]").

[25]*Twombley*, 550 U.S. 554 (stating that Rule 8(a)(2) "requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds on which it rests.").

[26]*McZeal*, 501 F.3d. at 1357.

[27]FED. R. CIV. P. RULE 84.

[28]*Intravisual Inc. v. Fujitsu Microelectronics America Inc.*, 2011 WL 1004873 (E.D. Tex. 2011); *see also Clear With Computers, LLC v. Hyundai Motor America, Inc.*, 2010 WL 3155885 (E.D. Tex. 2010) (Holding that to construe Form 18 as no longer sufficient because of *Twombley* and *Iqbal* would render Rule 84 and Form 18 invalid, which cannot be the case).

infringement; (5) a demand for an injunction and damages.[29]

In Aguirre's complaint, he alleged the Court had jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).[30] His complaint contained allegations of infringement of patent laws of the United States, satisfying the federal question jurisdiction for Count I. Within his complaint, Aguirre stated that he owned the '344 Patent[31] and he further stated that Octagon "has been and now is directly and jointly infringing . . . the '344 Patent."[32] While Aguirre did not explicitly state that notice had been provided to Octagon, the court can construe notice because the "filing of an action for infringement shall constitute such notice."[33] Octagon was put on notice of the infringement at least by the filing of the original complaint. Finally, Aguirre made a demand for "a preliminary and permanent injunction . . . enjoining these Defendants," and for "monetary damages in an amount not yet determined."[34] Aguirre has complied with the pleading requirements of direct infringement as set forth by Form 18.

Defendant Octagon's motion to dismiss the claim of direct infringement is denied.

## 2. Indirect Infringement of U.S. Patent No. 7,384,344

Aguirre claims that Octagon indirectly infringed the '344 Patent by way of "inducing infringement and/or contributing to the infringement . . . [by] making, using, selling and/or offering

---

[29] *See* FED. R. CIV. P. FORM 18.

[30] Docket #3 at ¶6.

[31] *Id*. at ¶10-20.

[32] *Id*. at ¶71.

[33] 35 U.S.C.A. § 287(a).

[34] Docket #3 at ¶¶72, 73.

for sale systems and/or methods . . . covered by . . . the '344 Patent."[35]  To satisfy the claim of

contributory infringement, Aguirre must establish that Octagon "(1) sold a material to be used in a

patented process; (2) that said material constituted a material part of the patented process; (3) that

defendants *knew* the material to be especially adapted for use in the infringement of such patent; and

(4) that the material did not constitute a staple article suitable for substantial noninfringing use."[36]

(Emphasis added).  A violator of 35 U.S.C.A. § 271(c) "must know that the combination for which

his component was especially designed was both patented and infringing."[37]  It is well established

in case law that knowledge of the infringement is an absolute requirement in finding liability for

contributory infringement.  At no point in Aguirre's complaint did he allege that Octagon knew that

they were contributing to the infringement of the '344 Patent.

Aguirre's claim of inducing infringement has four elements that must be met:

"(1) There was direct infringement by the induced party; (2) the inducer had
knowledge of the asserted patents; (3) the inducer 'possessed specific intent and [not]
merely . . . knowledge of the acts alleged' to induce; (4) there was active inducement
of the direct infringer."[38]

Like contributory infringement, direct infringement by inducing infringement[39] has an essential

---

[35]*Id*. at ¶71.

[36]*Sing v. Culture Products*, 469 F.Supp. 1249, 1254-1255 (E.D. Mo. 1979).

[37]*Global-Tech Appliances Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2067 (2011), citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

[38]*Medtronic Vascular Inc. v. Boston Scientific Corp.*, 348 F.Supp.2d 316, 323 (D. Del. 2004), citing *Ferguson Beauregard/ Logic Controls v. Mega Sys.*, 350 F.3d 1327, 1342 (Fed. Cir. 2003).

[39]In the report and recommendation of the Magistrate Judge, the Magistrate Judge referred to inducing infringement as "direct infringement by inducing infringement."  In his objections to the report, Aguirre provided unnecessary instruction to the court on the difference between "direct infringement" and "inducing infringement," asserting that the report conflated the two provisions.

knowledge component. Based on the history of the statute, the Court in *Global-Tech* explicitly held that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement."[40] Nowhere within Aguirre's complaint did he allege that Octagon had knowledge as to either of the forms of indirect patent infringement. Absence of knowledge is a fatal flaw in a claim for indirect patent infringement. The indirect patent infringement claims against Octagon are dismissed.

In Aguirre's objection to the report and recommendation of the Magistrate Judge, he states that his failure to allege Octagon's knowledge of the patent could be easily remedied if he were given leave to amend his complaint to include a statement to that effect. Aguirre's original complaint was filed on August 23, 2010. He subsequently filed his First Amended Complaint on September 17, 2010. FRCP Rule 15(a)(1) provides that, as a matter of course, "a party may amend its pleading once."[41] On September 17, 2010, Aguirre exercised his right to amend his original complaint. Any amendment after the first requires either the opposing party's written consent or the leave of the court, which should be granted freely when justice so requires.[42]

Defendant Octagon's motion to dismiss Count I is granted in part and denied in part. The motion is denied with regard to direct infringement; Aguirre met the pleading requirements. The motion is granted with regard to the indirect infringement claim and the claim is dismissed without

---

However, the Magistrate Judge seems to conflate nothing; rather, the Magistrate Judge was emphasizing that the active inducement must induce *direct infringement*, hence, "direct infringement by inducing infringement." Aguirre appears to be misapprehending the Report.

[40] *Global-Tech Appliances Inc.*, 131 S.Ct. at 2068.

[41] Fed. R. Civ. P. 15(a)(1).

[42] Fed. R. Civ. P. 15(a)(2).

prejudice to allow for the filing of an amended complaint.

## B. Count II: Sherman Antitrust Act §2

In Count II of the First Amended Complaint, Aguirre makes a claim under section 2 of the Sherman Antitrust Act that the defendants "have attempted to monopolize the market for portable, resistance-based training aids for golfers"[43] by attempting to enforce a patent unenforceable due to fraud. Section 2 of the Sherman Antitrust Act provides that a "person who shall monopolize, or attempt to monopolize, or combine with any other persons, to monopolize any part of the trade or commerce . . . shall be deemed guilty of a felony . . . ."[44] Dismissal has been requested by all defendants on the grounds that Aguirre lacks standing because he failed to allege that the defendants have taken any action to enforce the Celone Patent against Aguirre or done anything to monopolize the market for portable, resistance-based training aids for golfers. Defendant Octagon further asserts that Aguirre has failed to make any argument or allege any facts against Octagon that would minutely suggest the defrauding of the USPTO by Octagon.

Aguirre's claim is called a *Walker Process* claim; derived from the Supreme Court's decision in which the Court determined that enforcement of a patent procured by fraud on the USPTO can serve as the basis for a claim under §2.[45] To prevail on his *Walker Process* claim, Aguirre must establish: (1) the defendants attempted to enforce the patent flowing from the Celone application; (2) the Celone Patent issued because the defendants defrauded the patent office; (3) the defendants'

---

[43]Docket #3 at ¶91.

[44]15 U.S.C. §2.

[45]*Walker Process Equipment v. Food Machinery and Chemical Corp.*, 382 U.S. 172, 175 (1965).

attempted enforcement threatened to lessen competition in the market for portable resistance-based training aids for golfers; (4) Aguirre suffered antitrust damages; and (5) all other elements of monopolization.[46]  To prove attempted monopolization, Aguirre must "prove (1) that the defendant . . . engaged in predatory or anti-competitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."[47]  "If the patentee has done nothing but obtain a patent in a manner that the plaintiff believes is fraudulent, the courts may not entertain a *Walker Process* claim."[48]

Aguirre does not meet the first or third elements of the *Walker Process* claim with regard to the non-Octagon defendants.  Aguirre claims that "the Defendants nonetheless continued to advertise heavily, relying repeatedly on the fact that their product was 'patented,' and attempted to enforce the unenforceable Celone patent."[49]  As the Magistrate Judge noted, Aguirre is suggesting enforcement by "advertising heavily," which is not the typical means of enforcement.  "Enforcement" is typically defined as "the act or process of compelling compliance with a [patent]."[50]  A common form of means to compel compliance with a patent would be a cease and desist letter.  To equate advertising, a legitimate business interest, with a cease and desist letter is a stretch that fails to reach across the line of plausibility[51] without some further reasoning or explanation as to how Aguirre was compelled

---

[46]*Unitherm Food Sys. v. Swift-Eckrich*, 375 F.3d 1341, 1355 (Fed. Cir. 2004).

[47]*Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993).

[48]*Unitherm Food Sys.,* 375 F.3d at 1358.

[49]Docket #3 at ¶89.

[50]Black's Law Dictionary 608 (Bryan A. Garner et al. eds., 9th ed. 2009).

[51]*See Iqbal*, 129 S.Ct. at 1951.

to comply with the Celone Patent by such means. Within Aguirre's complaint, he does not address any other purported means of enforcement. Aguirre does offer within his response to defendant's motion to dismiss as proof a letter dated September 16, 2010 from Powerchute Sports to Aguirre.[52] Aguirre stated that Powerchute Sports "claims that the '929 Patent is invalid due to the existence of the Celone Patent."[53] However, Powerchute Sports responds in sum that it believes Aguirre's claims were without merit because of certain distinct differences in the patents, suggesting that the two patents could co-exist.[54] Aguirre has failed to allege any facts that the Court could reasonably infer to show that the defendants attempted to enforce the Celone Patent. The first element of the *Walker Process* claim is not met. Without proper allegations of attempted enforcement of the Celone Patent, the third element of a *Walker Process* claim is also not met.

Additionally, as stated by the Magistrate Judge, Aguirre did not allege the defendants engaged in predatory or anti-competitive conduct or that a dangerous probability of achieving monopoly power exists. In his objection to the Magistrate Judge's report and recommendation, Aguirre states only that "the Defendants have attempted to monopolize the market," and that "[t]he facts alleged in the First Amended Complaint are sufficient."[55] Aguirre makes no reference to any particular set of facts that he believes supports his claim and the Court finds none within his complaint. In the absence of these allegations, the Court cannot draw the reasonable inference that the defendants are liable for attempting to monopolize the market for portable, resistance-based

---

[52]Docket #21 at 7-8.

[53]*Id.*

[54]*Id.* at 3.

[55]Docket #44 at 7.

training aids for golfers by attempting to enforce a patent unenforceable due to fraud. Aguirre has failed to state a claim under the Sherman Antitrust Act §2.

With specific regard to the motion to dismiss filed by Octagon, Aguirre has failed to allege any facts regarding Octagon that could meet *any* element of the *Walker Process* claim. In Aguirre's Count II claim, he only mentions the non-Octagon defendants and fails entirely to reference Octagon within that claim.

The Count II Claim with regard to Octagon is dismissed with prejudice. The Count II claim with regard to Powerchute Sports, James Sowerwine, and TC Trust is dismissed without prejudice.

## C. Count III: Common Law Fraud

Aguirre alleged the defendants engaged in common law fraud.[56] His factual allegations for this claim focus on alleged fraudulent statements to the patent office by attorneys representing nonparty Sowerwine Golf, Inc., which is now a defunct company according to Aguirre.[57] Aguirre asserts that Sowerwine Golf's attorney misrepresented the abandonment of the Celone Patent application as unintentional and that such statements were made on behalf of, or to the benefit of, the defendants.[58] All defendants asked for dismissal of this claim, arguing that Aguirre failed to state a claim.[59] The Magistrate Judge's Report and Recommendation recommended dismissal of the common law fraud claim. The recommendation of the Magistrate Judge has not been objected to by Aguirre. Therefore, the court will overrule the recommendation only if it is clearly erroneous.

---

[56] Docket #3 at ¶¶93-101.

[57] *Id*. at ¶51.

[58] *Id*. at ¶¶93-101.

[59] Docket #16 at 6-7; Docket #18 at 6-7.

To prove his fraud claim, Aguirre must prove: "(1) [the defendants] made a material representation that was false; (2) [they] knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) [they] intended to induce [Aguirre] to act upon the representation; and (4) [Aguirre] actually and justifiably relied upon the representation and thereby suffered injury."[60] Rule 9 requires Aguirre to plead these elements with particularity.[61]

Aguirre characterizes the statements made by the attorney representing defendants as a fraudulent misrepresentation. Texas jurisprudence does not focus on whether an alleged misrepresentation was directly transmitted to the plaintiff, but rather on whether the defendant intended for the misrepresentation to reach the plaintiff and induce reliance.[62] It has been held that "a misrepresentation made through an intermediary is actionable if it is intended to influence a third person's conduct."[63] However, Aguirre did not allege that the attorney made the misrepresentation to the USPTO intending to influence Aguirre's conduct. Aguirre did allege that the attorney had reason to expect that Aguirre would rely on the representation in believing that the Powerchute was properly patented. Aguirre also failed to plead any act made in reliance on the fraudulent misrepresentation.

As the Magistrate Judge stated, to draw a reasonable inference of liability from Aguirre's allegations, the court must assume (1) the attorney knew Aguirre was pursuing a patent for a device

---

[60]*Ernst & Young v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001); *see also Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983).

[61]FED. R. CIV. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . .").

[62]*Ernst & Young*, 51 S.W.3d at 578.

[63]*Id.* at 578.

similar to the Powerchute, (2) Aguirre knew about the prosecution of the Celone Patent application, and (3) Aguirre did not pursue efforts to sell his golfer's physical conditioning aid as a patented invention because of the Celone Patent. However, for the court to make these assumptions would be improper since the allegation of fraud must be stated with particularity.[64] There is no basis for reasonably inferring the liability of the defendants for the alleged misrepresentation, and therefore Aguirre has failed to state a claim for common law fraud and the claim should be dismissed.

The Report and Recommendation of the Magistrate Judge was not clearly erroneous. Count III against all defendants is dismissed with prejudice.

## D. Count IV: Tortious Interference with Prospective Business Relations and Economic Advantage

Aguirre claims tortious interference with prospective business relations and economic advantage. Aguirre states that as a result of the defendants' fraudulent and misleading statements and their conscious desire to prevent Aguirre from fully realizing the value of his patent, the defendants have caused actual harm and damage to Aguirre. All defendants have moved to dismiss on grounds that Aguirre has failed to state a claim for tortious interference.

The elements required to prevail on a claim for tortious interference are well established by the Texas courts. To prevail on a claim of tortious interference with prospective business relations, a plaintiff must show:

> "(1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or wrongful act by the defendant prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's

[64]FED. R. CIV. P. 9(b).

17

interference."[65]

Although Aguirre need not prove that "the contract would have certainly been made but for the interference[,] it must be reasonably probable, considering all of the facts and circumstances attendant to the transaction. More than mere negotiations must have taken place."[66] Aguirre failed to allege that he would have entered into a specific business relationship and that the relationship was prevented from occurring; however, the Texas Supreme Court has construed tortious interference to include interference with less specific potential customer relations.[67] Here, Aguirre asserts that the fraudulent misstatements by Sowerwine Golf's attorney prevented Aguirre "from being able to fully take the economic and business advantage of [his patent] as well as his own company."[68] Such an assertion is too vague to construe it as tortious interference with potential customer relations as it does not allege any specific or general potential business relationship. The economic and business advantage of a patent could mean to have exclusive rights to selling the product, to control the circumstances under which the product is sold, or to have the opportunity to license the product and collect royalties. The complaint should provide the Court with enough information for the court to reasonably infer that a business relationship was "reasonably probable" to occur. Count IV of the complaint is dismissed.

Additionally, the Texas Supreme Court has held that to "recover for tortious interference with

---

[65]*Baty v. ProTech Ins.Agency*, 63 S.W.3d 841, 860 (Tex. App.–Houston [14th Dist.] 2001, pet. denied) (interpreting the rulings of *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001); and *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex 2001)).

[66]*Hill v. Heritage Res*., 964 S.W.2d 89, 109 (Tex. App. - El Paso 1997, pet. denied).

[67]*Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001).

[68]Docket #3 at ¶104.

prospective business relation[s,] a plaintiff must prove that the defendant's conduct was independently tortious or wrongful."[69]  While the court does not require the plaintiff to necessarily prove an independent tort, the plaintiff must prove that the defendant's actions would be actionable under a recognized tort.[70]  "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference."[71]

Aguirre stated in his tortious interference claim that the defendants "have repeatedly committed fraud when they or their predecessors made false or misleading statements to the USPTO" regarding their self-claimed unintentional abandonment(s) when, according to Aguirre, the application was intentionally abandoned.[72]  In conjunction with his claim for tortious interference, Aguirre has also brought a claim for common law fraud.  However, for failure to object to the finding of the Magistrate Judge's recommendation regarding the fraud claim, the fraud claim is being dismissed with prejudice for failure to state a claim.  Of course, Aguirre need not actually prove an independent tort, but the actions he alleges must prove to be actionable under a recognizable tort.

It is notable that in its decision, the *Wal-Mart* court referenced three relevant cases where the plaintiffs succeeded on a tortious interference claim based on a defendant's fraudulent statements.[73]  In *Bradford*, the defendant falsely told police that plaintiff did not own the store premises;[74] in

---

[69]*Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

[70]*Id.*

[71]*Id.*

[72]Docket #3 at ¶103.

[73]*Wal-Mart Stores, Inc.*, 52 S.W.3d at 725.

[74]*Bradford*, 48 S.W.3d at 732.

*Edwards Transports*, the defendant falsely told plaintiff's customer that plaintiff had accused the customer of having an improper relationship with the defendant;[75] and in *American Freehold Land Mortgage Co.*, the defendant falsely told the plaintiff's customer that plaintiff was neglectful, irresponsible, and insolvent.[76] In all of these cases, the defendants made false representations regarding the respective plaintiffs. Here, Aguirre does not claim that the defendants made a false representation about him; rather, Aguirre only alleges that the defendants represented to the USPTO that they unintentionally abandoned their own patent application when, Aguirre claims, they in fact intentionally abandoned the patent application. As pleaded, Aguirre's claim for tortious interference with prospective business relations and economic advantage fails to allege independently tortious or wrongful actions that could satisfy the second element of tortious interference. At best, his current claims allege only that defendants' conduct was unfair.

Aguirre has failed to state a claim for tortious interference and the claim is dismissed. Since Aguirre has requested leave to amend his complaint to correct deficiencies, Aguirre's Count IV claims against Powerchute Sports, James Sowerwine, and TC Trust is dismissed without prejudice granting Aguirre leave to amend. Aguirre's Count IV claim, however, against defendant Octagon is dismissed with prejudice.

**E. Count V: Unjust Enrichment**

Aguirre asserts a claim for unjust enrichment in Count V. He states that "the Defendants have been unjustly enriched by the commission of fraud on the [patent office] by the Defendants,

---

[75]*Edwards Transport, Inc. v. Circle S Transports, Inc.*, 856 S.W.2d 783, 788 (Tex. App. - Amarillo 1993, no writ).

[76]*American Freehold Land Mortgage Co. v. Brown*, 54 Tex.Civ.App. 448, 118 S.W. 1106 (1909, writ ref'd).

their agents and/or predecessors."[77]  He further claims that "the Defendants have wrongfully secured the benefit of the Celone patent due to . . . fraud on the [patent office] and it is unconscionable that they should retain the benefit of this fraud."[78]  All defendants seek dismissal for failure to state a claim.

Aguirre pleads unjust enrichment independently of any other claim.  The Magistrate Judge recommended this claim be construed not as an independent cause of action, but rather as a basis for recovering damages.  "[U]njust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay."[79]  "Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits."[80]  However, the Texas courts seem split with some courts explicitly holding "that unjust enrichment is an independent cause of action."[81]

For the purposes of ruling on the motions to dismiss, the Court will construe Aguirre's unjust enrichment claim to be an independent cause of action.  Unjust enrichment is found "under circumstances in which one person has obtained a benefit from another by fraud, duress, or the

---

[77]Docket #3 at ¶109.

[78]Docket #3 at ¶110.

[79]*Walker v. Cotter Properties, Inc.*, 181 S.W.3d 895, 900 (Tex. App.–Dallas 2006, no pet.).

[80]*Villareal v. Grant Geophysical*, 136 S.W.3d 265, 270 (Tex. App.–San Antonio 2004, pet. denied).

[81]*Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.–Houston [1st Dist.] 2007, pet. denied); *see also Cristobal v. Allen*, 2010 WL 2873502 (Tex. App.–Houston [1st Dist.] July 22, 2010, no pet.); and *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998).

taking of an undue advantage."[82] Aguirre has failed to plead the defendants' obtaining of a benefit from Aguirre. Rather, he claims that "the Defendants have wrongfully secured the benefit of the Celone patent due to the Defendants['] . . . fraud on the USPTO."[83] Without the allegation that Aguirre conferred some form of benefit upon the defendants that could warrant the existence of an implied or quasi-contract, Aguirre cannot recover under the theory of unjust enrichment, and the unjust enrichment claim is dismissed.

The Count V claim with regard to Powerchute Sports, James Sowerwine, and TC Trust is dismissed. The Count V claim against defendant Octagon is dismissed with prejudice. Aside from an alleged partnership, Aguirre has made no allegations regarding fraud by Octagon nor Octagon's obtaining of a benefit from Aguirre.

### Conclusion

Defendant Octagon's Motion to Dismiss (Docket Entry No. 18) is GRANTED IN PART and DENIED IN PART. The motion is DENIED with regard to the direct infringement claim within Count I. The motion is GRANTED with regard to the indirect infringement claim within Count I and that claim is DISMISSED WITHOUT PREJUDICE to the Plaintiff refiling the claim in accordance with this order. All other claims against defendant Octagon are DISMISSED WITH PREJUDICE.

Defendants Powerchute Sports, LLC, James Sowerwine, and TC Trust, LLC's Motion to Dismiss Counts II-V (Docket Entry No. 16) is GRANTED. Counts II, IV, and V are DISMISSED WITHOUT PREJUDICE to the Plaintiff refiling the claims in accordance with this order. Count III

---

[82]*Hedenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

[83]Docket #3 at ¶110.

is DISMISSED WITH PREJUDICE.

It is so ORDERED.

SIGNED this 4th day of August, 2011.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE